# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**CONNIE GARDNER, dependent of RICHARD GARDNER, SR. (deceased),
Claimant Below, Petitioner**

**v.) No. 25-ICA-158**          (JCN: 2018003074)

**MURRAY AMERICAN ENERGY, INC.,
Employer Below, Respondent**

**FILED
December 4, 2025**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Connie Gardner, dependent of Richard Gardner, Sr. (deceased), appeals the March 18, 2025, order of the Workers' Compensation Board of Review ("Board"). Respondent Murray American Energy, Inc. ("Murray") filed a response.[1] Mrs. Gardner did not reply. The issue on appeal is whether the Board erred in affirming the claim administrator's order, which denied the application for fatal dependent's benefits.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds that there is error in the Board's order but no substantial question of law. For the reasons set forth below, a memorandum decision vacating and remanding for further proceedings is appropriate under Rule 21 of the Rules of Appellate Procedure.

Prior to Mr. Gardner's death, he was examined by the Occupational Pneumoconiosis ("OP") Board regarding his OP claim. The OP Board issued findings dated January 11, 2018, indicating that there was sufficient evidence to justify a diagnosis of OP with 10% pulmonary function impairment attributable to this disease based on the Board's spirometry testing. At the time, Mr. Gardner was 62 years old and had a 42-year dust exposure.

On June 6, 2018, the OP Board's testimony was taken at an initial hearing regarding Mr. Gardner's protest to a claim administrator's order granting a 10% permanent partial disability ("PPD") award. Jack Kinder, M.D., OP Board Chairperson, stated that the pulmonary studies on January 11, 2018, were valid and reproducible and indicated 15% impairment based upon the post bronchodilator ratio of 70, and 20% impairment based upon the DLCO. Dr. Kinder also reviewed the studies from East Ohio Regional dated May

---

[1] Ms. Gardner is represented by J. Thomas Greene, Jr., Esq., and T. Colin Greene, Esq. Murray is represented by Aimee M. Stern, Esq.

1

31, 2017, and compared the studies' findings. He noted that the East Ohio Regional ratio represented around 30% impairment, and the study showed 50% impairment. Dr. Kinder stated that the Board used the January 11, 2018, diffusion study, which would represent an overall impairment of 20%. Dr. Kinder testified that Mr. Gardner had a negative x-ray for pneumoconiosis and no other disease processes; 42 years of dust exposure ceasing work in February 2014 due to complications of diabetes; shortness of breath and chronic cough for 15 years; wheezing for 10-12 years; pneumonia as a child; diabetes and hypertension but no pulmonary surgery, emphysema, tuberculosis, or asthma; no rales; and harsh breath sounds bilaterally. Dr. Kinder stated that the East Ohio Regional was the best study of record, and that with 30% impairment shown on the post-bronchodilator test, it indicated the most impairment. However, Dr. Kinder testified that he did not believe that half of the disease related to pneumoconiosis; the Board remained of the opinion that, this being a "presumptive" claim, 10% impairment was an appropriate recommendation. It was noted that Mr. Gardner had a 25-year, 1/3 pack per day smoking history. Mallinath Kayi, M.D., another member of the OP Board, concurred with Dr. Kinder.

The OP Board testified at a final hearing on April 3, 2019. John Willis, M.D., an OP Board radiologist, stated that the January 11, 2018, films were of good quality and were negative with no evidence of OP. Drs. Kinder and Kayi testified that the Board remained of the opinion that presumptively 10% impairment was an appropriate recommendation. On December 20, 2019, Mr. Gardner underwent a chest x-ray, revealing: 1) a nodular density in the left lower lobe, which may represent a nipple shadow but cannot be confirmed, 2) a scar or atelectasis at the right lung base, and 3) chronic pleural reaction versus small bilateral pleural effusions.

On April 8, 2021, Neal Aulick, M.D., examined Mr. Gardner and opined that his lung function progressively worsened after he retired in 2014. Dr. Aulick stated that the chest x-ray showed no acute process, no evidence of parenchymal abnormalities, and no pleural abnormalities. Arterial blood gas studies and pulmonary function testing were performed. Dr. Aulick concluded that the testing showed 60% impairment of Mr. Gardner's pulmonary function. Dr. Aulick opined to a reasonable degree of medical certainty that Mr. Gardner had 45% impairment attributable to OP.

Mr. Gardner presented to Reynolds Memorial Hospital on November 2, 2021, with complaints of shortness of breath, fever, cough, generalized aches, and fatigue. Mr. Gardner tested positive for COVID-19, and the impression was pneumonia due to COVID-19, congestive heart failure, thrombocytopenia, and acute on chronic renal insufficiency. Records from Reynolds Memorial Hospital indicate that Mr. Gardner's death occurred on November 6, 2021. A physician signed a death certificate on November 18, 2021, and listed the immediate cause of death as acute renal failure and COVID-19. The physician listed black lung as an underlying cause of death and indicated that tobacco use did not contribute to Mr. Gardner's death. No autopsy was performed.

On July 19, 2022, the OP Board issued findings regarding Mr. Gardner's OP claim that was filed while he was still alive ("living claim"). The OP Board found sufficient evidence to justify a diagnosis of OP with no more than 10% pulmonary function impairment attributable to this disease, as previously found in this claim on January 11, 2018.

Dr. Aulick issued a letter dated January 20, 2023, after reviewing his testing and examination from April 8, 2021, and his opinion remained that Mr. Gardner had an overall impairment of 60% with 45% being attributable to his occupational exposure as a coal miner. Dr. Aulick's opinion was based upon Mr. Gardner's symptomatology, testing, and his April 8, 2021, examination. Dr. Aulick noted that Mr. Gardner had 42 years of coal mine employment, with 37 years underground. He stated that a review of the pulmonary function testing showed a DLCO of 38%, which was indicative of severe restrictive lung disease. Dr. Aulick opined that Mr. Gardner's OP was a material factor in his death.

On March 7, 2023, Gregory Wood, M.D., issued a letter indicating that he treated Mr. Gardner as his primary care physician for multiple years. Dr. Wood noted that Mr. Gardner was seen at the Respiratory & Occupational Lung Clinic on April 8, 2021, and that the testing showed 60% impairment of his pulmonary function, with 45% impairment attributed to OP. Dr. Wood opined that Mr. Gardner's weakened lung capacity due to OP may have played a factor in his death. Christopher Faber, M.D., at UPMC, issued a letter dated March 27, 2023, indicating that he was a board-certified pulmonologist and treated Mr. Gardner from 2019 to 2021. Dr. Faber stated that, from a pulmonary standpoint, Mr. Gardner had chronic obstructive pulmonary disease and OP. He stated that Mr. Gardner developed OP from 42 years of coal mining, most of it underground, and some at the face of the mine. Dr. Faber opined that OP was a significant contributing factor to Mr. Gardner's chronic lung disease. Mrs. Gardner filed an application for fatal dependent's benefits on May 1, 2023, alleging that OP was a contributing factor to Mr. Gardner's death.

The OP Board's testimony was taken at a final hearing on November 1, 2023, regarding Mr. Gardner's living claim. Dr. Kinder testified that he thought the Board made a mistake and that the OP Board should have recommended a 20% impairment based upon the diffusion. Dr. Kinder was asked about the report from Roger Abrahams, M.D., introduced by the employer, which concluded that the diffusion impairment was caused primarily by Mr. Gardner's cigarette smoking for 43 years at a rate of one-half to one pack per day. Dr. Kinder testified that Mr. Gardner had total pulmonary impairment based on diffusion studies, and he agreed that the majority of Mr. Gardner's impairment was due to nonoccupational factors. However, Dr. Kinder stated that he did not think he could rebut the presumption to a level of 10%, which was what Mr. Gardner previously received. Dr. Kinder stated that while Mr. Gardner's diffusion dropped significantly during his lifetime, the OP Board's radiologist found no evidence of emphysema, scarring, or other disease,

even though Mr. Gardner smoked for approximately 40 years. Thus, Dr. Kinder testified that Mr. Gardner should have been granted a 20% impairment.

On December 19, 2023, the OP Board issued findings on this claim, Mrs. Gardner's dependent's claim. The OP Board reviewed the death certificate and noted that no death summary or autopsy was available. The OP Board opined that Mr. Gardner's chest x-rays showed insufficient pleural or parenchymal changes to establish a diagnosis of OP. The Board opined that OP was not a material contributing factor in Mr. Gardner's death.

On January 8, 2025, the OP Board testified at a final hearing regarding the fatal claim. Dr. Kinder testified that he agreed with the radiologist's interpretation that the January 11, 2018, films showed no evidence of OP. He stated the Board reviewed the medical records contained in the file, including the information from the OP Board's previous evaluations of Mr. Gardner, the letters from Drs. Faber, Wood, and Aulick, the death certificate, and the Reynolds Memorial Hospital records regarding treatment in 2021. Dr. Kinder stated that the death certificate listed the cause of death as acute renal failure and COVID-19, and the words black lung were typed or possibly written in later. Dr. Kinder noted that this was a fairly complicated case because a diagnosis of OP had been previously made by the OP Board. Dr. Kinder stated that, despite the diagnosis, there was no radiographic evidence and no surgical pathology to review to document the presence of OP, other than the presumptive diagnosis. Dr. Kinder noted that Mr. Gardner was admitted to the hospital with COVID-19 and that records documented previous bypass surgery, coronary artery disease, type 2 diabetes, and hypertension. During Mr. Gardner's hospitalization in the ICU, he was intubated, and his blood pressure continued to drop. Dr. Kinder indicated that this was early on in the pandemic, and Mr. Gardner's comorbidities, including his coronary disease, diabetes, and hypertension added to his risk of death due to COVID. Dr. Kinder opined that Mr. Gardner would have passed away from COVID-19 regardless of a diagnosed 20% impairment from OP, and that there was insufficient evidence to give an opinion that OP materially contributed to Mr. Gardner's death.

On March 18, 2025, the Board affirmed the claim administrator's order denying the application for fatal dependent's benefits. The Board found that OP was not a material contributing factor in Mr. Gardner's death. The Board further found that the OP Board was not clearly wrong. Mrs. Gardner now appeals the Board's order.

Our standard of review is set forth in West Virginia Code § 23-5-12a(b) (2022), in part, as follows:

> The Intermediate Court of Appeals may affirm the order or decision of the Workers' Compensation Board of Review or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the Workers' Compensation Board of Review, if the substantial rights of the

petitioner or petitioners have been prejudiced because the Board of Review's findings are:

(1) In violation of statutory provisions;
(2) In excess of the statutory authority or jurisdiction of the Board of Review;
(3) Made upon unlawful procedures;
(4) Affected by other error of law;
(5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or
(6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Syl. Pt. 2, *Duff v. Kanawha Cnty. Comm'n*, 250 W. Va. 510, 905 S.E.2d 528 (2024).

The Board's analysis of the evidence lacks sufficient detail. The Board only noted that the OP Board testified that OP did not cause nor materially contribute to Mr. Gardner's death. The Board's discussion did not address the evidence from Drs. Faber, Wood, and Aulick or the specific testimony from the OP Board. We acknowledge that the OP Board's opinions are reviewed under a clearly wrong standard of review by the Board. However, this deferential standard does not relieve the Board from briefly addressing the evidence submitted and meritorious arguments made by the parties.

Upon review, we conclude that the Board failed to adequately consider and analyze the evidence in this claim. The Board simply restated the OP Board's conclusion, without any explanation or determination of the reliability or credibility of the evidence. The Supreme Court of Appeals of West Virginia has emphasized the need for the Board to perform an adequate analysis of the evidence in every claim. *See Workman v. ACNR Resources, Inc.*, 251 W.Va. 796, 916 S.E.2d 638 (2025), and *Gwinn v. JP Morgan Chase*, No. 23-172, 2024 WL 4767011 (W. Va. Nov. 13, 2024) (memorandum decision).

Accordingly, we vacate the Board's March 18, 2025, order and remand the claim to the Board for additional analysis.

Vacated and Remanded.

**ISSUED:** December 4, 2025

**CONCURRED IN BY:**

Chief Judge Charles O. Lorensen
Judge Daniel W. Greear
Judge S. Ryan White

5